FILED
2012 May-09  PM 03:55
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

DEBORAH HOLLOWAY WEAVER and
TAYLOR LEIGH-ANN WEAVER,

     Plaintiffs,

vs.                                                      CASE NO. CV-11-J-1425-NW

UNUM LIFE INSURANCE COMPANY
OF AMERICA,

     Defendant.

## MEMORANDUM OPINION

The plaintiffs filed the complaint in this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), asserting that the defendant wrongfully denied them accidental death benefits, in violation of 29 U.S.C. § 1001, *et seq*. The parties have filed cross motions for summary judgment[1] (docs. 31 and 34) and briefs in support of their respective positions (docs. 32 and 35). The parties filed responses to each others respective motions (docs. 43 and 45), and thereafter filed replies (docs. 46 and 47). The court also has before it the summary plan description and complete administrative record (doc. 12), unredacted copies of evidence contained in that record (exhibit C to plaintiffs' motion), deposition excerpts (exhibit A to plaintiffs' motion and exhibit A to plaintiffs' response) and select portions of defendant's claims

---

[1] Defendant's motion is actually styled as a "Motion for Judgment on the Administrative Record."

investigation manual (exhibit B to plaintiffs' motion and exhibit B to plaintiffs' response).   Upon consideration of the pleadings, memoranda and evidentiary submissions received, the court concludes that the plaintiffs' motion is due to be denied and the defendant's motion is due to be granted, for the reasons set forth herein.[2]

## FACTUAL BACKGROUND

At issue are the proceeds of an accidental death and dismemberment insurance policy the decedent, Thomas J. Weaver, purchased from his employer, non-party Pilgrim's Pride.  Exhibit 3A, UA-CL-LIFE1-000002 to 000007.[3]  On January 27, 2010, the decedent, while on top of a grain silo, either jumped or fell to the ground, resulting in his death.  The sole dispute in this case is whether the decedent's actions were intentional, in which case the defendant has no duty to pay proceeds on the policy, or accidental, in which case the plaintiffs are entitled to recover the sum of the policy proceeds from the defendant.

According to the administrative record, approximately fifteen minutes prior to the decedent's demise, he was terminated by his employer and hence had no reason

---

[2]Also pending are multiple motions to strike (doc. 44, 48, and 49).  The court finds said motions are rendered moot by this opinion and the contemporaneous order entered in accordance therewith.

[3]All further references to the administrative record contain the exhibit designation and Bates number only.  Exhibit 3A is labeled "LIFE1" while exhibit 3B is labeled "LIFE2"

to be on the top of the silo.  LIFE1-000010.  However, the death certificate in the record reflects a determination that the manner of death was "Accident" and not intentional.  LIFE1-000019.  Additionally, the Colbert County Medical Examiner ruled the death an accident because she found no evidence of a homicide.  LIFE1-000417 to 000418.  Because of questions as to why the decedent was on top of the silo, and whether he "fell, jumped or was pushed," defendant referred the claim to a field investigator for purposes of determining whether the death was accidental or not.  LIFE1-000103.

Meanwhile, in March 2010, the plaintiffs were notified that they would receive the sums of $35,548.63 and $576,288.36 as Group Life Insurance benefits, although the Accidental Death & Dismemberment ("AD&D") claims, for additional sums of $200,000.00 and $71,000.00, were pending review.  LIFE1-000168 to 000172; LIFE2-000010.  *See also* defendant brief (doc.35), at 4.

The AD&D claims record includes documentation from the Alabama Department of Forensic Sciences' review of the cause of the decedent's death.  In June 2010 that review concluded that the manner of death was accidental.  LIFE1-000369 to 000370.  That report states that the decedent was on the silo to check "on some issues that were creating problems with the performance of the silo."  LIFE1-000371.

3

The administrative record also contains the findings of the field investigator hired by defendant.[4]  LIFE1-000397.  That summary of findings includes that the decedent was reportedly in good spirits prior to his death.[5]  *Id.*  However, those notes also include a notation that the deceased was terminated by Pilgrim's Pride on the day of his death due to issues with one of the silos under his control.  LIFE1-000404, 000408.  According to the gentleman who replaced the decedent at Pilgrim's Pride, there was no work related reason for him to be on top of Silo 110 and he was not sure the silo in question was operational on the date of decedent's demise.  LIFE1-000406.  Silo 110 was not the silo with the issues that caused the decedent's termination.  LIFE1-000496.  He also informed the investigator that the decedent was not wearing his hard hart, carrying his walkie talkie, or wearing his favorite jacket when he went to the top of the silo.  LIFE1-000407.  A co-worker stated no one ever went to the top of a silo without some sort of communication, in case the conveyor belt elevator

---

[4]Due to redactions of the field investigator's notes in the administrative record,  the plaintiffs submitted an unredacted version of these findings.  Doc. 31, exhibit C.  The court has considered both versions.  The redactions concern conversations with attorneys for defendant and Pilgrim's Pride as to whether a confidentiality stipulation between defendant and Pilgrim's Pride was necessary.  Compare LIFE1-000401 with WEAVER013.  None of the redactions have any relevance to the ultimate decision before this court, that being whether defendant's decision to deny AD&D benefits was "reasonable."  From the court's review, none of the investigation findings were redacted in any way.

[5]According to the notes from this investigation, Pilgrim's Pride disputed defendant's right to conduct such an investigation.  Some of the delay in defendant's decision to deny benefits appears to arise from this dispute.  LIFE1-000399 to 000404.

4

stopped working.  LIFE1-000495.  Additionally, if there was an issue with the silo that caused the decedent to go to the top of it, that issue would have still been apparent after the decedent fell, and no such issue was found.[6]  *Id.*  However, the current feed mill manager stated that it would not be unreasonable for the decedent to have been on the roof of a silo at any given time.  LIFE1-000408.  A 42" high safety railing surrounds the top of the silo. LIFE1-000495.

The decedent was informed of his termination in a meeting that began about 11:15 a.m. and that lasted 30 to 40 minutes.[7]  LIFE1-000408.  Within 15-20 minutes of the meeting ending, the decedent was dead.  LIFE1-000409.  There are no written records of the termination.  *Id*.  No one saw the decedent ascending the silo and no one saw him fall.  LIFE1-000410.   No suicide note was found and no one reported that the decedent seemed depressed.  LIFE1-000418.   He had been an excellent employee for twelve years, but had made an egregious error, and was not offered any termination package, although he remained eligible for unemployment benefits and COBRA coverage.  LIFE1-000684.

---

[6]The decedent was found on the ground on the back side of silo number 110, which was one of the two silos furthest from the offices.  *See e.g.*, LIFE1-000416.

[7]The plaintiffs point out that this time frame does not fit with the evidence supporting that the decedent's body was found at approximately 1:15, when emergency personnel were called.

In addition to the factual investigation, defendant had decedent's medical records reviewed by its medical consultant, Kristin G. Sweeny, M.D. LIFE1-000493. She noted that an area on the side of the silo was found to have brain matter on it, indicating the decedent struck his head prior to his descent. LIFE1-000495. Dr. Sweeny recommended that defendant obtain decedent's urologists' records, and determine why the decedent had a prescription for an antidepressant filled the month before his death. LIFE1-000497.

Defendant obtained medical records for decedent. They reflect that in November 2009 the decedent reported to his doctor that he was under a lot of stress both at home and at work, so she prescribed Lexapro, an antidepressant. LIFE1-000526. Prior to that, the decedent had been diagnosed with and treated for prostate cancer. LIFE1-000527 to 000528, 000544 to 000546, 000607 to 000609. The medical records reflect he had minimal issues postdating prostate surgery, and he registered no complaints concerning his medical condition. LIFE1-000559 to 000568, 000615.

After the medical records and OSHA report[8] were obtained, the file was again sent to Dr. Sweeny for review. Her review includes a comment that OSHA

---

[8] The OSHA records were obtained by defendant through FOIA, and contain numerous redactions. *See* LIFE1-000796 to 000823; LIFE2-000269, 000289 to 000296.

6

determined that the decedent's death was an apparent suicide and not work related, and therefore terminated its inspection in March 2010. LIFE1-000682. Those records include findings that the weather was clear and dry on January 27, 2010, that the top of the silo was dry, and that there was no indication of anything which could have caused the decedent to trip while on top of the silo. LIFE1-000682 to 000683. Based on her review of the records, Dr. Sweeny concluded that the decedent's death was intentional and therefore a suicide. LIFE1-000686. On that basis, on November 4, 2010, the defendant notified the plaintiffs of its determination that AD&D benefits were not payable under the policy. LIFE1-000768 to 000772.

The plaintiff filed a request for appeal, and after review on appeal, the decision to deny benefits was again reached. 000779, 000784-000788, 000851-000857.

The parties do not dispute that Pilgrim's Pride was the Plan Administrator, and had delegated authority for benefit determinations to defendant UNUM. *See* plaintiffs' brief in support (doc. 32) at 6, defendant's brief in support (doc. 35) at 5. Additionally, the parties agree that the AD&D portion of the policy in question provides coverage for accidental bodily injury and excludes coverage for death resulting from suicide. Plaintiff's brief at 7, defendant's brief at 4.

The Summary Plan Description ("SPD") sets forth that the plan administrator, non-party Pilgrim's Pride, has absolute discretion to amend, modify, or terminate any

provisions of the plan at any time for any reason.  Defendant exhibit 1, at 60.  The

plan also allows Pilgrim's Pride to delegate its duties under the plan.  *Id.*, at 59.  The

Plan "acting through the Plan Administrator, delegates to Unum and its affiliate

Unum Group discretionary authority to make benefit determinations under the Plan

...Benefit determinations include determining eligibility for benefits and the amount

of any benefits, resolving factual disputes, and interpreting and enforcing the

provisions of the Plan.  All benefit determinations must be reasonable and based on

the terms of the Plan and the facts and circumstances of each claim."  *Id.,* at 64.

The sole issue raised in this case is factual, namely whether or not evidence

supports the defendant's determination that the decedent's death was by suicide, thus

removing eligibility for AD&D benefits under the policy in question.

## STANDARD OF REVIEW

A moving party is entitled to summary judgment if there is no genuine issue

of material fact, leaving final judgment to be decided as a matter of law. *See* Federal

Rule of Civil Procedure 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475

U.S. 574, 587, 106 S.Ct. 1348, 1355-56 (1986); *Reeves v. C.H. Robinson Worldwide,*

*Inc*., 525 F .3d 1139, 1143 (11th Cir.2008). The facts, and any reasonable inferences

therefrom, are to be viewed in the light most favorable to the non-moving party, with

any doubt resolved in the non-movant's favor. *See Adickes v. S.H. Kress & Co.*, 398

U.S. 144, 158, 90 S.Ct. 1598, 1609 (1970). All "reasonable doubts" about the facts and all justifiable inferences are resolved in favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir.1993). However, all "doubts" need not be so resolved. *Barnes v. Southwest Forest Industries, Inc.,* 814 F.2d 607, 609 (11th Cir.1987). Once met by the moving party, however, the burden shifts to the non-moving party to come forward with evidence to establish each element essential to that party's case sufficient to sustain a jury verdict. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); *Earley v. Champion Int'l Corp*., 907 F.2d 1077, 1080 (11th Cir.1990).

A party opposing a properly submitted motion for summary judgment may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir.1990). In addition, the non-moving party's evidence on rebuttal must be significantly probative and not based on mere assertion or be merely colorable. *See* Rule 56(e); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2511 (1986). Speculation does not create a genuine issue of fact. *Cordoba v. Dillard's, Inc*., 419 F.3d 1169, 1181 (11th Cir.2005).

"The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case ....

9

A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir.2000), quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995).   A factual dispute regarding a non-material issue will not preclude the defendant from succeeding on a motion for summary judgment.  *Brown v. American Honda Motor Co.*, 939 F.2d 946, 953 (11th Cir.1991).

## LEGAL ANALYSIS

The issue before the court is whether the factual finding of the defendant, namely that the decedent's death was by suicide, is correct.  As a fiduciary, the defendant must administer the Plan "for the exclusive purpose of ... providing benefits to participants and their beneficiaries" and "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(A)(i), (D). The defendant must also provide a "full and fair review" of claim denials. *Id*. § 1133(2).  ERISA itself provides no standards for evaluating a plan administrator's determination. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989).  The Eleventh Circuit Court of Appeals has set out the following steps to apply in reviewing "virtually all ERISA-plan benefit denials:"

(1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

(2) If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

(3) If the administrator's decision is "*de novo* wrong" and he *was* vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

(4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

(5) If there is no conflict, then end the inquiry and affirm the decision.

(6) If there is a conflict of interest, then apply heightened arbitrary and capricious review to the decision to affirm or deny it.

*White v. Coca-Cola Co.,* 542 F.3d 848, 853-854 (11th Cir.2008). "At each step, the court makes a determination that results in either the progression to the next step or the end of the inquiry." *Tippitt v. Reliance Standard Life Ins. Co.*, 457 F.3d 1227, 1232 (11th Cir.2006)(quoting *HCA Health Servs. of Ga., Inc. v. Employers Health Ins. Co.*, 240 F.3d 982, 993 (11th Cir.2001)).

The sixth step of this analysis, requiring a "heightened review," was altered by *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 S.Ct.2343, 171L.Ed.2d 299

(2008), where the Court ruled that the existence of a conflict of interest is "a factor" in determining whether there is an abuse of discretion.  *Id*., at 2347.  In turn, the Eleventh Circuit altered the guidelines with the instruction that "the existence of a conflict of interest should merely be a factor for the district court to take into account when determining whether an administrator's decision was arbitrary and capricious." *Doyle v. Liberty Life Assurance Company of Boston*, 542 F.3d 1352, 1360 (11th Cir.2008).   The "burden remains on the plaintiff to show the decision was arbitrary; it is not the defendant's burden to prove its decision was not tainted by self-interest." *Id.*

The court thus conducts the mandated analysis, as follows:

*(1) Apply the de novo standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.*

The court must first evaluate the claims administrator's interpretation of the plan to determine whether it is "wrong." *Glazer v. Reliance Standard Life Ins. Co.*, 524 F.3d 1241, 1246 (11th Cir.2008).   A decision is "wrong" if, after a review of the decision of the administrator from a *de novo* perspective, "the court disagrees with the administrator's decision." *Id.*, *citing Williams v. BellSouth Telecomms., Inc.,* 373 F.3d 1132, 1138 & n. 8 (11th Cir.2004).   *See also Jett v. Blue Cross & Blue Shield of*

*Ala.*, 890 F.2d 1137, 1139 (11th Cir.1989)("the function of the court is to determine whether there was a reasonable basis for the decision, based upon the facts as known to the administrator at the time the decision was made.").  If the court determines that the plan administrator was right, the analysis ends and the decision is affirmed. *Glazer,* 524 F.3d at 1246-1247; citing *Tippitt v. Reliance Standard Life Insurance. Co.*, 457 F.3d 1227, 1232 (11th Cir.2006).

The plaintiffs assert because of the common law presumption against a finding of suicide, the court must find the administrator's decision "wrong."  The defendant responds that the presumption is rebuttable.  *See, e.g., Horton v. Reliance Standard Life Ins. Co.*, 141 F.3d 1038, 1041–42 (11th Cir.1998)(the presumption drops out once "the factfinder becomes convinced, given all the evidence, that it is more likely than not that [insured] committed suicide.").

In the evidence before this court, the defendant undertook an extensive review of the facts, including the disputed facts, before reaching the determination it did.[9]

---

[9]Plaintiffs argue with some of the "facts" established, such as that the decedent was terminated from his employment shortly before his body was discovered on the ground.  Such arguments directly contradict this court's limitation to consideration of the evidence before the administrator at the time the administrator's decision was made.  *See e.g., Glazer* , 524 F.3d at 1246.  Even if Pilgrim's Pride outright lied to Unum about this, unless Unum knew the same to be untrue, that false statement was part of Unum's decision.  Recognizing Pilgrim's Pride has no interest in whether plaintiffs recover AD&D benefits, the plaintiffs suggest Pilgrim's Pride had motivation to lie about the termination to avoid payment of workers' compensation benefits.  This assertion is based wholly on speculation and far beyond this court's ability to consider in an ERISA case.  Plaintiffs continue down this path, suggesting if the decedent was not terminated, that he would have had reason to be on top of Silo 104 because of the hot spot, and Silo 110 was

Contained in the administrative record is sufficient evidence to support a finding that suicide was more likely than a tragic accident.  Under the unique facts of this case, there is no means by which either side can prove who is right and who is wrong.  This does not mean, as plaintiffs argue, that the fact-finder has to continue to presume the death was accidental in the face of evidence it was not.

The court also finds the facts of this case distinguishable from those in *Tyler v. AIG Life Insurance Co.*, 273 Fed.Appx. 778 (11th Cir.2008).  The plaintiffs rely on *Tyler* for the proposition that where the defendant insurer fails to demonstrate evidence of intent, the intentional self-injury exclusion does not apply.  Plaintiff's brief (doc. 32) at 24.  However, in *Tyler* the court was considering whether the decedent in that case knew leaping from a slow moving car was certain to result in death. *Tyler* examined cases of fatal car accidents where the decedent was intoxicated in concluding that "the question is whether the decedent had a reasonable basis to believe that her conduct made serious injury or death a virtual certainty. An objective test inquiring as to the foreseeability of serious injury or death to a reasonable person

---

not that far away, so he logically could have left his hard hat, walkie talkie, and hearing aids elsewhere, and without a word to anyone, climbed to the top of Silo 104 for maintenance reasons, meandered over to Silo 110 for some other purpose, and then accidentally slipped, falling over the 42" high safety railing.  Of course, in the realm of possibilities, all of this could have happened.  Unfortunately, there is no evidence supporting any of it.

in the same circumstances is not appropriate."[10]  *Id.,* at 783.  However, *Tyler* in the

first instance assumes the decedent intended to undertake the action which caused

death, such as driving while intoxicated.  *See e.g., id.*, at 783-784 (quoting *Hairston,*

*v. Liberty National Life Insurance Co.*, 584 So.2d 807, 809 (Ala.1991)("A jury could

find that the death, while a result of the insured's voluntary actions, was something

unforeseen, unexpected and unusual, or that ... the insured died as a result of a

miscalculation of his capabilities.").  *Tyler* is of no assistance to the issue before this

court.[11]

        Under the above standards, the court finds that the decision of the administrator

was not "wrong."  Specifically, the court finds the defendant's determination to be

reasonable, well-supported and supported by the facts it had before it.  Because the

court finds that the plan administrator was right, the court goes no further in the

---

[10]Assuming this analysis is appropriate in this case, the question before this court would be whether the decedent had a reasonable basis to believe that jumping from a 160 foot tall silo would make his death a "virtual certainty."

[11]The same is true of plaintiffs' reliance on *Butler v. Group Life and Health Insurance Co.*, 962 S.W.2d 296, 300 (Tex.App.1998).  There, the court held "[w]hile the insured's actions may have been foolish and fraught with risk, playing with what one believes to be an unloaded gun is not an action that the insured should have reasonably anticipated would probably result in death." *Id*.

analysis.[12]  *See Glazer*, 524 F.3d at 1246-1247; citing *Tippitt v. Reliance Standard Life Insurance. Co.*, 457 F.3d 1227, 1232 (11th Cir.2006).

## CONCLUSION

For the reasons stated herein, the court is of the opinion that the decision of the plan administrator was correct.   Because this case is before the court on cross-motions for summary judgment, and the court is of the opinion that no genuine issues of material fact exist, the court is of the opinion that this matter is wholly disposed of by the cross-motions.   An Order affirming the decision of the plan administrator, granting the defendant's motion for judgment on the pleadings, and denying the plaintiffs' motion for summary judgment, shall be entered contemporaneously herewith.

**DONE** and **ORDERED** this the 9th day of <u>May</u>, 2012.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE

---

[12]Buried in plaintiffs' response to defendant's motion for judgment on the administrative record is a section entitled "Plaintiffs Respectfully Requests (sic) this Court to Stay its Ruling on UNUM's Motion to Allow Additional Time to Conduct Discovery Regarding UNUM's Conflict of Interest Pursuant to Fed.R.Civ.P., Rule 56(f) Affidavit."  Doc. 43 at 21.  The court declines to so indulge the plaintiffs.  Having considered said request, the court finds that even if the same was properly presented in a motion, and pursuant to Rule 56(d), Fed.R.Civ.P., the plaintiffs already have been allowed discovery on the very issue presented.  Additionally, as the court does not reach the "conflict of interest" portion of the analysis, allowing further discovery on the same would have no bearing on the outcome of the court's decision.  To the extent said Rule 56(d) motion is actually pending before the court, the same is **DENIED**.